UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-122-TBR

MY RETIREMENT ACCOUNT
SERVICES, *et.al.*,                                                              PLAINTIFFS

V.

ALTERNATIVE IRA SERVICES, LLC, *et al.*,                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Defendants Alternative IRA Services, LLC, DitigalIRA.com LLC, Camilo Concha and Chris Kline's ("Defendants") Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, and Alternatively, Motion For More Definite Statement, [DN 5], and Defendants' Motion to Dismiss For Lack of Personal Jurisdiction or Alternatively, Motion to Transfer, [DN 6]. Plaintiffs responded to both motions, [DN 21], and Defendants replied, [DN 22]. This matter is ripe for adjudication. For the reasons stated herein: Defendants' Motion to Dismiss For Lack of Personal Jurisdiction is GRANTED and Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted and Alternatively, Motion For More Definite Statement is DENIED AS MOOT.

## BACKGROUND

The factual allegations, as set forth in the Complaint and presumed to be true at the motion to dismiss stage of litigation, are as follows.[1] Plaintiff My Retirement Account Services, LLC d/b/a Kingdom Services is a Kentucky limited liability company with its principle place of business in

---

[1] When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

Murray, Kentucky. [DN 1 at 3]. Kingdom Services wholly owns and provides administrative services to Kingdom Trust, a South Dakota corporation with its principle place of business in Kentucky. *Id.* Kingdom Trust is a trust custodian holding various types of assets in individual retirement accounts ("IRA") on behalf of its clients. *Id.* at 7. A portion of the assets held by Kingdom Trust are digital assets including cryptocurrencies. *Id.*

Defendant Alternative IRA Services, LLC is a Delaware limited liability company with its principle place of business in Sherman Oaks, California. *Id.* at 3. Alternative IRA Services does business under several different names, including Digital IRA, Bitcoin IRA, Bitcoinira.com, and Digitalgold.com. *Id.* at 4. Defendant BitGo, Inc. is a Delaware corporation and its affiliate, BitGo Trust, is a South Dakota corporation. *Id.* Defendant Camilo Concha is the Chief Executive Officer of Bitcoin IRA and DigitalIRA.com and is a resident of California. *Id.* at 4. Defendant Chris Kline is the Chief Operating Officer of Bitcoin IRA and DigitalIRA.com and is a resident of California. *Id.* at 5.

Beginning in early 2018, Kingdom Trust entered into an agreement with Bitcoin IRA pursuant to which Bitcoin IRA provided a technology platform allowing Kingdom Trust clients to buy and sell digital assets held in their IRAs. *Id.* at 8. Around this time, BitGo, Inc. and Kingdom Trust entered into a Merger Agreement and a Confidentiality Agreement. *Id.* at 9–10. However, in May 2018, BitGo, Inc. terminated the merger and the relationship between the companies dissolved. *Id.* at 10. In September 2018, Kingdom Trust and Bitcoin IRA entered into a Referral Agreement whereby Kingdom Trust paid a fee to Bitcoin IRA for each client referred to and accepted by Kingdom Trust from Bitcoin IRA. *Id.* Throughout the course of this relationship, the companies shared trade secrets, client lists, and other proprietary information with each another. *Id.* at 8–10.

On May 7, 2019, DigitalIRA.com and its parent company, Digital Asset Group, LLC entered into a Third Party Administrator Engagement Agreement with BitGo Trust Company and BitGo Holdings, Inc. *Id.* at 13. Pursuant to this agreement, DigitalIRA.com would act as a third-party administrator to market and retail self-directed IRAs holding cryptocurrencies and other alternative assets held by BitGo Trust. *Id.* at 14. Plaintiffs claim that DigitalIRA.com, Bitcoin IRA, BitGo Inc., and BitGo Trust then "developed a plan to contact all Kingdom Trust clients with cryptocurrency assets in their IRAs and convert them to BitGo Trust clients." *Id.*

Beginning in June 2019, BitCoin IRA began sending letters, emails, and posting links on Bitcoin IRA's technology platform directing Kingdom Trust clients to upgrade their account. *Id.* at 18. However, Plaintiffs claim these efforts actually directed clients to an asset transfer form which clients could use to transfer their assets from Kingdom Trust to BitGo Trust. *Id.* As a result of Defendants' actions, Kingdom Trust claims it received approximately 665 transfer requests between June and August 2019. *Id.* at 19–26.

Before transferring its clients' assets, Kingdom Trust claims it was required by federal and state law to perform due diligence on BitGo Trust and its relationships with service providers. *Id.* at 17. In response to Kingdom Trust's delay in executing the transfers, Defendant Concha sent Kingdom Trust a cease and desist letter demanding Kingdom Trust execute the transfers immediately. *Id.* at 19. Kingdom Trust also claims that BitGo Trust encouraged clients to contact South Dakota banking regulators and complain about the delay. *Id.* at 20. According to the Complaint, Defendants continued to contact Kingdom Trust clients and encourage them to transfer their assets to BitGo Trust until the current action was filed in August 2019.

## LEGAL STANDARD AND ANALYSIS

I. **Waiver of Personal Jurisdiction Defense**

First, the Court will address Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiffs claim that Defendants have waived their right to assert a personal jurisdiction defense pursuant to Federal Rule of Civil Procedure 12(h) because they previously filed a motion to dismiss for failure to state a claim. [DN 21 at 502]. In response, Defendants claim they have not waived their personal jurisdiction defense because the concurrently filed motion to dismiss for failure to state a claim incorporates their motion to dismiss for lack of personal jurisdiction. [DN 22 at 582]. Moreover, Defendants claim a waiver in this instance would be contrary to the purpose of Rule 12. *Id.*

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to challenge the court's personal jurisdiction. However, "[t]he ability to challenge personal jurisdiction is not indefinite and can be waived if not pled at the correct time." *Nat'l Feeds, Inc. v. United Pet Foods, Inc.*, 118 F.Supp.3d 972, 973 (N.D. Ohio 2015) (citing *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011)). Rule 12(h) provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by" omitting it from an earlier Rule 12 Motion. Fed. R. Civ. P. 12(h). Rule 12(b) includes motions to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b). Accordingly, if Defendants filed a Rule 12 motion to dismiss for failure to state a claim upon which relief may be granted and omitted their personal jurisdiction defense, that defense would be waived by operation of Rule 12(h). *See Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 648–49 (6th Cir. 2016).

However, the Sixth Circuit has noted that a party does not waive a defense under Rule 12(h) by failing to plead that defense with sufficient specificity. *King v. Taylor*, 694 F.3d 650, 657 (6th Cir. 2012) (collecting cases) ("*See Mattel, Inc. v. Barbie–Club.com,* 310 F.3d 293, 307 (2d Cir. 2002) ('[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree

4

of specificity.'); *compare United States v. Ziegler Bolt & Parts Co.,* 111 F.3d 878, 880, 882 (Fed. Cir. 1997) (defendant's assertion in his answer that the complaint was 'barred because of insufficient service of process' was adequate to preserve the defense at the outset); *and Holzsager v. Valley Hosp.,* 646 F.2d 792, 795–96 (2d Cir. 1981) (answer's assertion that the district court 'lacked jurisdiction over the person of the defendant' was sufficient under Rule 12(h)(1) to preserve a personal-jurisdiction defense based on constitutional concerns)"). Therefore, a Rule 12 motion that simply asserts that the court lacks personal jurisdiction is sufficient to prevent waiver of the defense.

In this case, Defendants filed their motion to dismiss for failure to state a claim concurrently with their motion to dismiss for lack of personal jurisdiction. [*See* DN 5; DN 6]. Although the motion to dismiss for lack of personal jurisdiction was technically entered into the electronic filing system after the motion to dismiss for failure to state a claim, Defendants have not waived their right to assert a personal jurisdiction defense under Rule 12(h). For one, Defendants incorporated their personal jurisdiction defense into the motion to dismiss for failure to state a claim by stating, "Defendants contend all Counts should be dismissed against them pursuant to Federal Rule of Civil Procedure 12(b)(2) as they are not subject to personal jurisdiction in Kentucky." [DN 5-1 at 76]. Thus, Defendants' preserved their personal jurisdiction defense under Rule 12(h) by asserting the defense in their first responsive filing.

Moreover, barring Defendants from asserting their personal jurisdiction defense based on an electronic technicality would be contrary to the purpose of the Federal Rules. "Courts have held that the purpose of Rule 12(h) is to eliminate unnecessary delays by requiring parties to raise most Rule 12 defenses before the court undertakes adjudication of the issues on the merits." *Nat'l Feeds, Inc.*, 118 F.Supp. at 973; *see also Gundaker/Jordan Am. Holdings Inc. v. Clark*, No. CIV.A.04-

226-JBC, 2009 WL 1851097, at *3 (E.D. Ky. June 26, 2009) ("Instead, "[t]he objective to the Rule is to eliminate unnecessary delay at the pleading stage by requiring the defendant to advance up-front every available Rule 12 defense and objection he or she may have that is assertable by motion."). By simultaneously filing a motion to dismiss for failure to state a claim and a motion to dismiss for lack of personal jurisdiction, Defendants eliminated unnecessary delay at the pleading stage of the litigation. In light of the purpose of the Federal Rules, the Court finds that the Defendants' personal jurisdiction defense is not barred and continues with its analysis of personal jurisdiction below.

## II. Motion to Dismiss For Lack of Personal Jurisdiction

Under Rule 12(b)(2), the burden is on the Plaintiffs to show that personal jurisdiction exists as to each defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). When an evidentiary hearing has not been held, as in this case, a plaintiff's burden is "relatively slight" and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "[T]he pleadings and affidavits submitted must be viewed in a light most

favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Under Kentucky law, the Court first considers Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the statutory requirements are met, the Court must then apply the constitutional due process test "to determine if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Id. Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause." *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).

### A. Kentucky Long-Arm Statute

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(2). [DN 6]. In particular, Defendants contend that Plaintiffs have failed to establish personal jurisdiction under both KRS § 454.210(2)(a)(3) and § 454.210(2)(a)(4). [DN 6-1 at 112]. The Kentucky long-arm statute provides, in relevant part:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a claim arising from the person's: . . .
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this

> Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

Ky. Rev. Stat. § 454.210(2)(a)(3)-(4). For purposes of the statute, the term "person" includes nonresident commercial entities. *Id.* § 454.210(1).

### i.  § 454.210(2)(a)(3)

Regarding § 454.210(2)(a)(3), Defendants argue "Plaintiffs do not once allege the occurrence of any acts in the State of Kentucky – in fact, all of Plaintiffs' allegations relate to Defendants' conduct either in their home state of California or directed to [Kingdom Trust] in its home state of South Dakota . . . ." [DN 6-1 at 113]. Plaintiffs do not dispute this argument in their Response. [*See generally* DN 21]. Instead, Plaintiffs claim: "Defendants' activities *directed* at Kentucky caused harm in Kentucky." *Id.* at 510. Since Plaintiffs do not assert that Defendants' alleged tortious actions were committed *in* Kentucky, the Court finds that Plaintiffs have not established personal jurisdiction under § 454.210(2)(a)(3).

### ii.  § 454.210(2)(a)(4)

Additionally, Defendants claim that the Court does not have personal jurisdiction pursuant to § 454.210(2)(a)(4) because Defendants do not "1) regularly conduct[] or solicit[] business in the State of Kentucky; 2) [do] not engage in any persistent course of conduct in the State of Kentucky; and 3) [do] not derive substantial revenue from goods used or consumed or services rendered in the State of Kentucky." [DN 6-1 at 113]. Although Plaintiffs failed to address the requirements of the Kentucky long-arm statute in their Response, they make several factual allegations which may be relevant to establishing personal jurisdiction. [DN 21 at 509]. Plaintiffs claim that Defendants "engaged in a persistent course of conduct" and "engaged in business" in

Kentucky by emailing Plaintiffs' employees located in Murray Kentucky; traveling to Murray, Kentucky to conduct business on one occasion; calling Plaintiffs' employees in Murray, Kentucky; and mailing written correspondence and transfer requests to Plaintiffs in Murray, Kentucky. *Id.* at 508–09.

First, the Court finds that Defendants do not regularly conduct or solicit business in the state of Kentucky. Defendants have no offices, employees, or agents in Kentucky and are not registered to do business in Kentucky. [DN 22 at 575]; *See Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F.Supp. 761,765 (W.D. Ky. 1997) (finding there was "scant evidence" that defendants did business in Kentucky when neither defendant had "any business operations whatsoever within Kentucky"); *Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655, 658 (W.D. Ky. 2007). Moreover, Defendant Kline's single visit to Kentucky in 2017 fails to demonstrate that Defendants *regularly* conduct business in the state. Further, Plaintiffs have not presented any facts to suggest that Defendants solicit business in Kentucky. Therefore, the Court may not exercise personal jurisdiction over Defendants on the basis that they regularly conduct or solicit business in Kentucky.

Second, Plaintiffs have failed to plead or demonstrate that Defendants "derive substantial revenue from goods used or consumed or services rendered" in Kentucky. Thus, the Court may not exercise personal jurisdiction over Defendants pursuant to § 454.210(2)(a)(4)'s "substantial revenue" prong.

The issue remains whether Defendants engaged in a persistent course of conduct in Kentucky such that personal jurisdiction is proper under § 454.210(2)(a)(4). Generally, courts applying Kentucky's long-arm statute have been "unpersuaded by the fact that Defendant may have communicated with the Plaintiff through letters, telephone calls, e-mails or facsimiles

directed to Kentucky." *Spectrum Scan, LLC*, 519 F.Supp.2d at 658; *see also Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 3:14-CV-166-H, 2014 WL 2200674, at *8 (W.D. Ky. May 27, 2014) ("[P]eriodic communications via email and telephone about a single contract, do not constitute persistent conduct, nor does the entry into a single, potentially long-term contract."). In *Spectrum Scan, LLC v. AGM California*, the court noted that "the only reason" such communications "were directed to Kentucky is because Plaintiff found it convenient to be located there. Presumably, it was immaterial to Defendant whether Plaintiff [conducted business] in Kentucky, California, or elsewhere and Defendant would have been willing to communicate with Plaintiff without regard to Plaintiff's location." *Spectrum Scan, LLC*, 519 F.Supp.2d at 658. This principle has been echoed by other courts, although in the context of the due process purposeful availment test. *See Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, Ltd.*, 381 F. Supp. 2d 638, 642–43 (W.D. Ky. 2005) ("[T]he most of the significant contacts with Kentucky arise simply from Papa John's having its headquarters here and performing its own work here, rather than from Defendants either performing or deliberately aiming their conduct here."); *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997) ("Nor is our conclusion altered by the fact that the defendants communicated with International Technologies in Michigan by letter, telephone, and facsimile. Such communications have no talismanic qualities, and the only reason the communications in question here were directed to Michigan was that International Technologies found it convenient to be present there." (internal citations omitted)).

In this case, Plaintiffs claim that Defendants engaged in a persistent course of conduct in Kentucky by emailing, calling, and mailing correspondence to Plaintiffs' employees located in Murray, Kentucky. [DN 21 at 509–10]. Additionally, Plaintiffs claim that Defendant Kline visited Kentucky in 2017, though based on the pleadings, this visit occurred before the formation of

Defendant entities Bitcoin IRA and DigitalIRA.com, and before much of the conduct complained of in this case occurred. [DN 1 at 8]. The Court concludes that these contacts fail to establish a persistent course of conduct in Kentucky. The parties' entire relationship centered around Kingdom Trust, a South Dakota trust company licensed to do business in South Dakota, servicing clients nationwide through the internet. It is presumably immaterial to Defendants that Kingdom Trust's administrative services were located in Murray, Kentucky. Defendants would have emailed, called, and mailed letters to Plaintiffs in South Dakota or any other state Plaintiffs wished to locate their administrative services, it just happens that Plaintiffs have chosen to reside in Kentucky. Thus, Defendants did not engage in a persistent course of conduct within the state and the Court does not have personal jurisdiction pursuant to § 454.210(2)(a)(4).

Even assuming that Plaintiffs could establish that Defendants engaged in a persistent course of conduct in Kentucky, they fail to demonstrate a sufficient causal link between their claims and Defendants' contacts with the state. In their Motion to Dismiss, Defendants argue that "Plaintiffs do not provide any analysis as to how their claims arise from Defendants' contacts with Kentucky." [DN 22 at 575]. Although Plaintiffs neglected to specifically address Kentucky's long-arm statute, they asserted in their Response that 1) Defendants obtained proprietary, confidential, and trademark information through their phone calls, emails, and correspondence directed toward Kentucky; 2) Defendants sent tortious e-mails to Kingdom Trust clients, some of which were located in Kentucky; 3) Defendants called Plaintiffs in Kentucky demanding they transfer client assets, forgo performing due diligence, and threatening to file false reports to the South Dakota Division of Banking; 4) Defendant Kline mailed a declaration to Kentucky; 5) Defendants breached a contract that was being performed, in part, in Kentucky; and 6) Defendants told

11

Kingdom Trust clients to call a Kingdom Trust phone number that connected to a phone in Kentucky." [DN 21 at 510].

In order to establish personal jurisdiction under Kentucky's long-arm statute, "the plaintiff's claim must have arisen from the conduct and activities of the defendant described in the applicable statutory provision." *Caesars*, 336 S.W.3d at 58–59 (Ky. 2011). "[T]he Kentucky Supreme Court has definitively stated that simply engaging in activities listed in [§ 454.210(2)(a)] is not enough—the actual cause of action must *arise from* those activities, meaning that [the] cause of action 'must have originated from, or came into being, as a result' of those activities." *John Conti Coffee Co. v. MAPCO Express, Inc.*, No. CV 13-39-GFVT, 2014 WL 12648449, at *3 (E.D. Ky. Jan. 2, 2014) (quoting *Caesars*, 336 S.W.3d at 58). Thus, in this case, Plaintiffs' claims "must have originated from, or came into being, as a result of" Defendants' persistent course of conduct in Kentucky. *Caesars*, 336 S.W.3d at 58.

Here, Plaintiffs' claims include trade secrets violations, trademark infringement, tortious interference with contractual relations, defamation, unfair competition, civil conspiracy, and breach of contract. These claims are based on the theory that Defendants formed a relationship with Plaintiffs in order to gain information about their business and then unlawfully used that information to entice Kingdom Trust clients to move their assets to BitCo Trust. The acts giving rise to Plaintiffs' claims bear little relationship to Defendants' conduct in Kentucky. More specifically, Plaintiffs claims do not appear to originate from Defendants' calls, emails, and correspondence to Kingdom Trust's administrative services. Instead, it appears that the claims result primarily from Defendants alleged attempts to disseminate information to Kingdom Trust clients nationwide through emails, letters, and the internet in order to secure the transfer of assets to their own trust company. Therefore, the "arising under" requirement of Kentucky's long-arm

statute is not satisfied. *See John Conti Coffee Co.*, 2014 WL 12648449, at *4 (finding that a trademark infringement that allegedly occurred only in Tennessee did not "arise from" Defendant's transacting business in Kentucky).

This Court may not exercise personal jurisdiction over Defendants pursuant to § 454.210(2)(a). Since the statutory requirements are not met, it is unnecessary to conduct the constitutional analysis to determine whether exercising personal jurisdiction over Defendants would offend their due process rights. *See Luvata Electrofin, Inc. v. Metal Processing Intern., LP*, 2013 WL 3961226, at *3 (W.D. Ky. Sept. 10, 2012) (explaining that the court will turn to the constitutional due process inquiry only if it first finds that it can exercise personal jurisdiction over defendants under Kentucky's long-arm statute). Moreover, since the Court lacks personal jurisdiction over Defendants, the Court does not have authority to address their remaining motions.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DN 6] is **GRANTED.** Defendants' Motion to Transfer [DN 6] and Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, and Alternatively, Motion for a More Definite Statement, [DN 5], is **DENIED AS MOOT**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

*[signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 17, 2019

CC: Attorneys of Record